# J. S. Lowrey & Co., Appellants, *v.* Joseph Ulmer.

*Contracts—Lex loci.*

A sale for which an order was taken in Williamsport, Pa., for goods to be delivered by vendors, a New York house, f. o. b. in New York, discloses a contract to be completed in New York, and therefore to be construed by the law of that state.

*Contract—Rescission—Fraud—Replevin.*

Under the law of New York whenever property is obtained from another with the preconceived design on the part of the purchaser to cheat the vendor out of the same, the vendor, upon discovery of the fraud may avoid the contract and retake the property.

*Contract—Fraud as evidenced by knowledge of insolvency.*

By the law of New York the receiving of goods at a time when the vendee knew he was insolvent, and other facts showing his insolvency at the time of purchase, are evidence of fraudulent intent at the time of the purchase, and even if there were no representations at the time of the purchase as to insolvency, yet, if the suppression of the insolvency is under such circumstances as to point to fraudulent concealment coupled with the intention not to pay for the goods, the vendors can rescind the sale for such fraud and retake the goods.

Vendees purchased goods in December, 1894, which were delivered on March 18, 1895. On March 23d vendors notified vendees that the contract was rescinded. On March 25th vendees confessed judgment and were sold out by the sheriff, subject to the vendors' notice of claim of title to their goods. There was evidence of actual insolvency at time of order and of knowledge of insolvency by vendees before receipt of goods. *Held*, that it was error to limit the investigation of the jury to vendee's knowledge of insolvency at the date of the order; and that the investigation of the jury should have been directed under proper instructions to the whole transaction up to the time of receiving the goods from the common carrier. If at that time vendees knew they were insolvent and received property with intention not to pay for it; they were guilty of fraud in law under the New York authorities, which control this case.

Argued Feb. 18, 1896. Appeal No. 3, Feb. T., 1896, by plaintiff, from judgment of C. P. Lycoming County, June Term, 1895, No. 345, on verdict in favor of defendant. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Replevin for goods sold and delivered by plaintiff to Huff

Bros. and sold by sheriff on a confessed judgment by vendees to Joseph Ulmer. The value of the goods sold was $172.75. Verdict for defendant and for 6 cents damages.

The facts sufficiently appear from the opinion of the Superior Court.

*Errors assigned* were among others, (4) refusal to affirm plaintiff's third point, reciting same as set out in the opinion of the Superior Court; (5) error in answer to plaintiff's seventh point, as set out in the opinion of the Superior Court; (7) error in answer to defendant's first point, as set out in the opinion of the Superior Court.

*T. M. B. Hicks, W. H. Spencer* with him, for appellant.—The sale in question was made in the state of New York, and the law of that state must therefore cover the case; Story on Conflict of Laws, 8th ed., p. 376; 3 Am. & Eng. Ency. of Law, 561, and authorities cited in note 5; 21 Am. & Eng. Ency. of Law, 511, and note 3; Garbracht v. Commonwealth, 96 Pa. 449; Perlman v. Sartorius, 162 Pa. 320.

The time of sale was that point of time at which the goods were set apart and delivered to the purchaser, which it was admitted was March 18, 1895: 1 Benjamin on Sales, 6th Am. ed., p. 321, art. 308; idem, p. 422, art. 462; idem, p. 466, art. 517; 21 Am. & Eng. Ency. of Law, 487, and note 1; Andrews v. Read, 106 N. Y. 333. On the question of the fraud: Perlman v. Sartorius, 162 Pa. 324; Boyd v. Shiffer, 156 Pa. 100; Schwartz v. McCloskey, 156 Pa. 258; Baughman v. Bank, 159 Pa. 94. The whole question has been expressly ruled by the New York Court of Appeals, whose decision in this case should be conclusive: Whitten v. Fitzwater, 129 N. Y. 626. Since the sale in question is governed by the laws of New York this court has a right to look to the above cited case on the interpretation of that law, though they were not offered in evidence in the court below: Bock v. Lauman, 24 Pa. 435.

*C. LaRue Munson, Addison Candor* with him, for appellee. —If the purchaser is solvent when he orders the goods they cannot be replevied by the vendor: Perlman v. Sartorius, 162 Pa. 324; Rodman v. Thalheimer, 75 Pa. 232; Biddle v. Black,

99 Pa. 380. Admitting all the arguments of the appellants they cannot rescind their action, because the vendees did not know their insolvency until after the goods had been delivered on March 18, 1895.

OPINION BY ORLADY, J., April 13, 1896:

J. S. Lowrey & Co., appellants, wholesale dry goods merchants of New York City, seek, through an action of replevin in rescission of a contract, to recover certain goods sold to Huff Bros., retailers of men's furnishings at Williamsport, Pennsylvania.

On December 26, 1894, a salesman of appellants called upon Huff Bros. at their place of business in Williamsport, and, after exhibiting his samples, received an order for certain goods of the value of $172.75, which were to be delivered the next spring. In accordance with the terms of the order the goods were delivered on board cars at New York on March 18, 1895, consigned to Huff Bros., who were to pay the freight charges. The exact date of their arrival at Williamsport, Pennsylvania, is not shown, but within a few days after shipment Huff Bros. received the goods, paid the freight thereon and placed the goods in their general stock. On March 22, 1895, Huff Bros. were notified as follows :—

"MESSRS. HUFF BROS., 132 West Fourth St., Williamsport, Pa.

"Dear Sirs :—You are hereby notified that the contract of sale whereby J. S. Lowrey & Co., of the city of New York, shipped to you on March 18th, 1895, at Williamsport, Penna., various men's furnishing goods, of the value of $172.75, is rescinded, and that title to said goods never passed to you, and that J. S. Lowrey & Co. are still owners of the same.

"Yours truly,

"J. S. LOWREY & Co.,

"by their attorneys, Hicks & Spencer."

On March 25th following, Huff Bros. voluntarily confessed a judgment to C. W. Huff (their father) for $700, and one to Joseph Ulmer as trustee for local creditors, for $2,818.93. These plaintiffs at once caused executions to be issued, and the stock of goods in the store of the defendants to be levied upon. The sheriff was served with a notice of the claim of appellants to

the goods, on account of which, at the sale on April 1st, that officer sold only the interest of the defendants in the goods in dispute, which were then purchased by Joseph Ulmer, under a like notice, for $1,202.

On April 15th following, a writ of replevin was issued and served on Joseph Ulmer. The goods were delivered to the plaintiffs, who gave pledges, etc.

On the trial it was admitted, in an agreement of counsel, amongst other things, as follows :—

" Fifth. That when the said order for the said goods was given, the said Huff Bros. did not inform the said J. S. Lowrey & Co. that they, the said Huff Bros., were insolvent, nor was any such information imparted to said plaintiffs or to any one for them before the said sale was made, nor before the said goods were delivered, as aforesaid.

" Sixth. That J. S. Lowrey & Co., the plaintiffs, at the time of the transaction above set forth, did not know the said Huff Bros. were insolvent.

" Seventh. That it is the law of the state of New York that an insolvent vendee, knowing himself to be insolvent, who conceals from the vendor, or fails to disclose to the vendor, the facts of such insolvency, acquires no title to the goods sold and delivered by the vendor to such vendee, in ignorance of the vendee's insolvency."

The plaintiffs submitted a number of points, the principal of which are :

" Third. The time of the sale of these goods and merchandise was the time when the contract of sale was consummated by the delivery by J. S. Lowrey & Co. to Huff Bros. of said goods and merchandise ; and, under the admitted facts in this case, that time was on or about the 18th day of March, 1895."

The answer being :

Per Curiam : We refuse this point. [4]

" Seventh. Under the admissions and the law in this case, there is but one fact left for the jury to decide, and that is whether or not, at the time of the sale of the goods in controversy in this case by J. S. Lowrey & Co. to Huff Bros., which, as above stated, was consummated and took place on or about March 18, 1895, the said Huff Bros. were insolvent and knew themselves to be so."

Per Curiam: We cannot affirm this point, because we have already said that we think they are governed by what took place on the 26th of December instead of on the 18th of March; besides, so far as the law is concerned, we have reserved that point. [5]

The defendant submitted:

"First. That to enable the plaintiffs to recover in this case it is incumbent upon them to show that Huff Bros. were insolvent on December 26, 1894, when the goods were ordered from the plaintiffs, and at that time Huff Bros. knew they were insolvent, and there being no such evidence in the case the plaintiffs cannot recover."

Per Curiam: We cannot so instruct you. The evidence is for you, and I am unable to say that there is not evidence that ought to be submitted to the jury. But we do say that to enable the plaintiffs to recover in this case, it is incumbent upon them to show that Huff Bros. were insolvent on the 26th of December, 1894, when the goods were ordered from the plaintiffs, and at that time Huff Bros. knew they were insolvent on the 26th of December, 1894, when the goods were ordered from the plaintiffs, and at that time Huff Bros. knew they were insolvent. [7]

The question reserved was:

"We are going to reserve the legal question as to whether this contract of sale is to be governed by the laws of New York or the state of Pennsylvania. If it is to be governed by the laws of the state of Pennsylvania, then the question of their insolvency and the knowledge of their insolvency would have nothing to do with this case, because this sale was made on an execution, issued on a judgment, and the purchaser was a creditor, and it was purchased by him at a judicial sale in trust for the creditors. If this contract is to be governed, however, by the laws of the state of New York, then they will have a case, provided you find that on the 26th of December 1894, when their salesman took the order, they were insolvent, and also find that they knew they were insolvent, and the finding of these facts we are going to submit to you."

The verdict was for the defendant, and after hearing a motion in arrest of judgment and for a new trial, the court filed an opinion as follows:

" After examining the law applicable to this case, I am of opinion that no error was committed on the trial of the same. The bargain was made and the goods ordered on the 26th day of December, 1894. Everything was complete except delivery. There was no further communication between the parties prior to the delivery of the goods, and no fraud could be perpetrated thereafter. The case was properly submitted to the jury under proper instructions. The reason of the law is such that the law is applicable only to the time of the purchase. It is then the duty of the purchaser to speak. Otherwise, if he conceals his insolvency, when aware of it, he perpetrates a fraud. Therefore, now, to wit, October 28, 1895, after due consideration, the motion in arrest of judgment is overruled and a new trial refused."

The contract was executory in Pennsylvania; to be executed in New York. The order was only part of the contract. The owners had a right to refuse delivery up until the time of parting with legal control of their property.

Under the evidence the contract of sale was complete on March 18, 1895, when appellants delivered the goods to the common carrier in New York: Perlman v. Sartorius, 162 Pa. 320.

Joseph Ulmer bought the goods with the full knowledge of appellants' claim and took only the title of Huff Bros. in the goods: Goodwin v. Wertheimer, 99 N. Y. 152.

The fact to be proved is that the purchase was completed with an intent to defraud: Devoe v. Brandt, 53 N. Y. 465.

Whenever property is obtained from another with a preconceived design upon the part of the purchaser to cheat and defraud the vendor out of the same, the vendor, upon discovery of the fraud may avoid the contract and retake the property: Nichols v. Michael, 23 N. Y. 266.

The receiving of the goods, at a time when the vendee knew he was insolvent, and other facts showing his insolvency at the time of the purchase, are evidence, however, of fraudulent intent at the time of the purchase, and even if there were no representations at the time of the purchase as to insolvency, yet if the suppression of the insolvency is under such circumstances as to point to a fraudulent concealment, coupled with an intention not to pay for the goods, the vendor can rescind the sale

for such fraud and retake the goods: Brown v. Montgomery, 20 N. Y. 287; Wright v. Brown, 67 N. Y. 4.

Huff Bros. could not dishonestly accept goods in March, 1895, even if they had been honestly ordered in December, 1894. The confessed judgments represented an indebtedness, all of which, $3,518.93, was due before the goods were ordered.

It was error to limit the investigation of their known insolvency to December 26, 1894, as the jury might have found that they honestly intended to pay for them when ordered, but that the exigencies of their business had so changed as to convince them of their insolvency at the time of receiving the goods, the effect of which would be to increase their assets to pay certain preferred creditors, and deprive these appellants of their property without hope of any payment therefor.

The investigation by the jury should have been directed under proper instructions to the whole transaction, up to the time of receiving the goods from the common carrier. If, at that time, they knew they were insolvent, and received the property with the intention not to pay for it, they were guilty of fraud in law under the New York authorities, which control in this case: Pike v. Wieting, 49 Barb. 314 ; Whitten v. Fitzwater, 129 N. Y. 626.

. While Bughman v. Central Bank, 159 Pa. 94, and Cincinnati Cooperage Company v. Gaul, 170 Pa. 545, have been cited, we prefer to decide this case under the New York authorities, as counsel have made them the standard to be followed.

The fourth, fifth and seventh assignments of error are sustained, which dispose of all questions raised, and the judgment is reversed and a venire facias de novo awarded.